# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 19, 2014      Decided July 24, 2015

No. 13-5247

STATE NATIONAL BANK OF BIG SPRING, ET AL.,
APPELLANTS

v.

JACOB J. LEW, IN HIS OFFICIAL CAPACITY AS UNITED STATES
SECRETARY OF THE TREASURY, ET AL.,
APPELLEES

Consolidated with 13-5248

Appeals from the United States District Court
for the District of Columbia
(No. 1:12-cv-01032)

*Gregory F. Jacob* argued the cause for Private Appellants. With him on the briefs were *Sam Kazman*, *Hans Bader*, *C. Boyden Gray*, *Adam J. White*, and *Adam R.F. Gustafson*.

*Patrick R. Wyrick*, Attorney, Office of the Attorney General for the State of Oklahoma, argued the cause for State Appellants. With him on the briefs were *E. Scott Pruitt*, Attorney General, *Alan Wilson*, Attorney General, Office of the Attorney General for the State of South Carolina, *James*

2

*Emory Smith*, *Jr.*, Attorney, *Samuel S. Olens*, Attorney General, Office of the Attorney General for the State of Georgia, *John E. Hennelly*, Attorney, *Bill Schuette*, Attorney General, Office of the Attorney General of the State of Michigan, *Neil D. Gordon*, Attorney, *Jon Bruning*, Attorney General, Office of the Attorney General of the State of Nebraska, *Katherine J. Spohn*, Attorney, *Luther Strange*, Attorney General, Office of the Attorney General for the State of Alabama, *Andrew L. Brasher*, Deputy Solicitor, *Derek Schmidt*, Attorney General, Office of the Attorney General for the State of Kansas, *Jeffrey A. Chanay*, Deputy Attorney General, *Timothy C. Fox*, Attorney General, Office of the Attorney General for the State of Montana, *Lawrence VanDyke*, Attorney, *Greg Abbott*, Attorney General, Office of the Attorney General for the State of Texas, *John Reed Clay*, *Jr.*, Attorney, *Michael DeWine*, Attorney General, Office of the Attorney General for the State of Ohio, *Jennifer L. Pratt*, Assistant Attorney General, *Patrick Morrisey*, Attorney General, Office of the Attorney General for the State of West Virginia, and *Elbert Lin*, Solicitor General. *Matthew T. Cochenour*, Assistant Attorney General, Office of the Attorney General for the State of Montana, and *Aaron D. Lindstrom*, Attorney, Office of the Attorney General for the State of Michigan, entered appearances.

*Daniel Tenny*, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief were *Stuart F. Delery*, Assistant Attorney General, *Ronald C. Machen*, *Jr.*, U.S. Attorney, *Mark B. Stern*, Attorney, *Meredith Fuchs*, General Counsel, Consumer Financial Protection Bureau, *John R. Coleman*, Senior Counsel, *Katherine H. Wheatley*, Associate General Counsel, Board of Governors of the Federal Reserve System, *Joshua P. Chadwick*, Counsel, *Colleen J. Boles*, Assistant General Counsel, Federal Deposit Insurance Corporation, *Kathryn R.

3

*Norcross*, Senior Counsel, *Jerome A. Madden*, Counsel, *Gregory F. Taylor*, *Douglas B. Jordan*, and *Gabriel Hindin*, Attorneys, Office of the Comptroller of the Currency, *Michael A. Conley*, Deputy General Counsel, Securities and Exchange Commission, *William K. Shirey*, Assistant General Counsel, *Ajay B. Sutaria*, Counsel, Office of General Counsel, Commodity Futures Trading Commission, and *John K. Ianno*, Senior Associate General Counsel, National Credit Union Administration.

Before: ROGERS, KAVANAUGH, and PILLARD, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*: In response to the financial crisis in 2008 and 2009, Congress passed and President Obama signed the Dodd-Frank Wall Street Reform and Consumer Protection Act. *See* Pub. L. No. 111-203, 124 Stat. 1376 (2010). State National Bank is a bank in Big Spring, Texas, between Midland and Abilene. In this case, the Bank and a group of States challenge the constitutionality of various provisions of the Dodd-Frank Act.

First, State National Bank challenges the constitutionality of the new Consumer Financial Protection Bureau created by the Dodd-Frank Act. The Bureau is an independent agency that regulates consumer financial products and services. The Bureau is headed by a single Director. According to the Bank, independent agencies must be headed by multiple members rather than by a single person. *Cf. Humphrey's Executor v. United States*, 295 U.S. 602, 624, 631-32 (1935). For that reason, among others, the Bank claims that the Bureau is unconstitutional. The Bank also argues that

4

Congress's broad delegation of authority to the Bureau violates the non-delegation doctrine. *See J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928).

Second, the Bank contests the constitutionality of President Obama's recess appointment of the Bureau's head, Director Richard Cordray. On July 18, 2011, President Obama nominated Cordray as Director of the Bureau. As of January 4, 2012, the Senate had not acted on the nomination, so President Obama used his recess appointment power to appoint Cordray during a three-day intra-session Senate recess. On July 16, 2013, after Cordray had been serving under his recess appointment for 18 months, the Senate confirmed Cordray. The Bank alleges that Director Cordray's recess appointment (and the actions he took before he was confirmed) was unlawful because the appointment occurred during an intra-session recess of insufficient length. *See NLRB v. Noel Canning*, 134 S. Ct. 2550, 2566-67, slip op. at 19-21 (2014); *see also Mathew Enterprise, Inc. v. NLRB*, 771 F.3d 812, 813-14 (D.C. Cir. 2014).

Third, the Bank challenges the constitutionality of the new Financial Stability Oversight Council created by the Dodd-Frank Act. The Council monitors the stability of the U.S. financial system and responds to emerging threats to that system. The Council's voting members include, among others, the Secretary of the Treasury, the Chairman of the Federal Reserve, the Comptroller of the Currency, the Director of the Consumer Financial Protection Bureau, the Chairman of the Securities and Exchange Commission, and the Chair of the Federal Deposit Insurance Corporation (or FDIC). The Council possesses statutory authority to designate certain "too big to fail" (as they are colloquially known) financial companies for additional regulation in order to minimize the risk that such a company's financial distress

5

will threaten the stability of the American economy. The Bank argues that the Council is unconstitutional under the non-delegation doctrine and related separation of powers principles because the Council has broad and unchecked power to decide which companies should face additional regulation.

Fourth, the State plaintiffs challenge the Dodd-Frank Act's grant of new liquidation authority to the U.S. Government. The Act gives the Treasury, the Federal Reserve, and the FDIC "the necessary authority to liquidate failing financial companies that pose a significant risk to the financial stability of the United States." 12 U.S.C. § 5384(a). That is called "orderly liquidation authority." The Government has broad power when exercising its orderly liquidation authority to alter the priority of a financial company's creditors. The State plaintiffs and their pension funds are investors in bonds issued by large financial institutions. The States say that their current investments are worth less because of how the Government might exercise its orderly liquidation authority in the future if those financial institutions were to run into significant financial difficulties and be liquidated or reorganized. The State plaintiffs argue that the orderly liquidation authority – because it grants the Government broad power to alter the priority of creditors – is unconstitutional under the Bankruptcy Clause's guarantee of uniform bankruptcy laws and under non-delegation and due process principles.

Plaintiffs filed suit in the U.S. District Court for the District of Columbia. The District Court concluded that the plaintiffs did not have standing and that their claims were not ripe. Plaintiffs appealed to this Court. Our review of the

6

standing and ripeness determinations is de novo, and we consider plaintiffs' four challenges in turn.[1]

I

First, State National Bank challenges the constitutionality of the new Consumer Financial Protection Bureau created by the Dodd-Frank Act. The question at this juncture is whether the Bank has standing to raise that claim and, if so, whether the claim is ripe for review now rather than in any later enforcement action against the Bank.

For standing, the question is whether State National Bank has suffered an injury in fact caused by the Bureau and redressable by the Court. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The Supreme Court has stated that "there is ordinarily little question" that a regulated individual or entity has standing to challenge an allegedly illegal statute or rule under which it is regulated. *Id.* at 561-62. So it is in this case.

State National Bank claims that the Bureau is unconstitutional. The Bank is not a mere outsider asserting a

---

[1] The 60 Plus Association, which is a nonprofit advocacy group representing the interests of seniors, and the Competitive Enterprise Institute, which is a nonprofit public policy organization, also joined the Bank's suit. On appeal, they do not advance arguments for standing independent of the Bank's arguments. The State plaintiffs are the States of Alabama, Georgia, Kansas, Michigan, Montana, Nebraska, Ohio, Oklahoma, South Carolina, Texas, and West Virginia. The State plaintiffs challenge only the Government's orderly liquidation authority. The Bank, the 60 Plus Association, and the Competitive Enterprise Institute joined the State plaintiffs' challenge to the Government's orderly liquidation authority, but they do not advance arguments on appeal for standing with respect to that challenge.

7

constitutional objection to the Bureau. The Bank is regulated by the Bureau. Under the Dodd-Frank Act, the Bureau "shall regulate the offering and provision of consumer financial products or services under the Federal consumer financial laws." 12 U.S.C. § 5491(a). The Act authorizes the Bureau to implement those "Federal consumer financial laws through rules, orders, guidance, interpretations, statements of policy, examinations, and enforcement actions." *Id.* § 5492(a)(10). State National Bank offers and provides consumer financial products and services. The Bureau has already exercised its broad regulatory authority to impose new obligations on banks, including State National Bank. For example, in 2012 the Bureau promulgated the Remittance Rule. *See* 12 C.F.R. §§ 1005.30-1005.36. The Remittance Rule imposes disclosure requirements on institutions that offer international remittance transfers, which are electronic money transfers. The Rule also offers a safe harbor, but banks such as State National Bank must incur costs to ensure that they are properly complying with the terms of that safe harbor. *See* 77 Fed. Reg. 50,244, 50,274-75 (Aug. 20, 2012). The Bank indeed alleged that it must now monitor its remittances to stay within the safe harbor, and the monitoring program causes it to incur costs. *See* Purcell Decl. ¶¶ 18, 20, J.A. 105.

There is no doubt that the Bank is regulated by the Bureau. Under *Lujan*, the Bank therefore has standing to challenge the constitutionality of the Bureau.

The remaining question at this stage is *when* the Bank may bring its claim. May it do so only as a defense in a future enforcement action, or may it bring this pre-enforcement challenge? That is a question of ripeness. The Supreme Court's landmark decision in *Abbott Laboratories* largely resolved the ripeness issue for many challenges to agency action. *See Abbott Laboratories v. Gardner*, 387 U.S. 136,

8

148-53 (1967). There, the Supreme Court ruled that affected parties could challenge agency regulations in pre-enforcement suits. The Supreme Court explained that regulated parties generally need not violate a law in order to challenge the law. *See id.* at 152-53.

The Bank is not challenging an agency rule that regulates its conduct (the usual kind of agency case we see), but rather is challenging the legality of the regulating agency itself. Still, the same basic *Abbott Laboratories* reasoning applies. As the Supreme Court stated in *Free Enterprise Fund*, it would make little sense to force a regulated entity to violate a law (and thereby trigger an enforcement action against it) simply so that the regulated entity can challenge the constitutionality of the regulating agency. *See Free Enterprise Fund v. Public Co. Accounting Oversight Board*, 561 U.S. 477, 490 (2010). To use the Supreme Court's words, we "normally do not require plaintiffs to bet the farm" by violating the law in order to challenge the constitutionality of the regulating agency. *Id.* (internal quotation marks omitted).

In short, the Bank has standing to challenge the constitutionality of the Consumer Financial Protection Bureau, and the case is ripe. The parties have not briefed the merits of the constitutional challenge to the Bureau. We therefore reverse and remand to the District Court for it to consider the merits of that claim.

9

II

Second, State National Bank contests the legality of President Obama's recess appointment of the Bureau's Director, Richard Cordray. Because of that allegedly illegal recess appointment, the Bank claims that the Bureau has operated in an unconstitutional manner. For the same reasons that the Bank has standing to challenge the constitutionality of the Bureau, the Bank has standing to challenge Director Cordray's recess appointment. And for the same reasons that the Bank's challenge to the Bureau is ripe, the Bank's challenge to Cordray's recess appointment is likewise ripe. We therefore reverse and remand to the District Court for consideration of the merits of this issue in light of the Supreme Court's decision in *Noel Canning*. *See NLRB v. Noel Canning*, 134 S. Ct. 2550, 2557, 2566-67, slip op. at 2, 19-21 (2014). In considering the Bank's claim, we leave it to the District Court to consider the significance of Director Cordray's later Senate confirmation and his subsequent ratification of the actions he had taken while serving under a recess appointment.

III

Third, the Bank argues that the Financial Stability Oversight Council created by the Dodd-Frank Act is unconstitutional. The Bank does not have standing to assert that claim.

The Dodd-Frank Act created a new Financial Stability Oversight Council "to identify risks to the financial stability of the United States that could arise from the material financial distress or failure, or ongoing activities, of large, interconnected bank holding companies or nonbank financial companies." 12 U.S.C. § 5322(a)(1)(A).

10

To meet that objective, the Council has the authority to designate certain "too big to fail" financial institutions for additional regulation, including supervision by the Federal Reserve. *See* 12 U.S.C. §§ 5323(a)(1), 5365. So far, the Council has designated American International Group, GE Capital Corporation, MetLife, and Prudential Financial for additional regulation and supervision.

State National Bank is a bank located in West Texas. State National Bank offers consumer financial services, including consumer deposit accounts and agricultural loans. State National Bank does not allege that it is subject to additional regulation as a "too big to fail" entity. Rather, it alleges that it is a competitor of GE Capital, which has been designated by the Council for additional regulation. GE Capital similarly offers consumer deposit accounts and agricultural loans in West Texas.

The Bank argues that the Council's designation of GE Capital for additional regulation has indirectly harmed State National Bank. According to the Bank, "GE Capital receives a reputational subsidy as a result of" its designation by the Council for additional regulation, "which allows GE Capital to raise money at lower costs than it otherwise could, negatively impacting the Bank's ability to compete for the same finite funds." State National Bank Br. 46.

As we have noted, if a party is the "object" of a government action, "there is ordinarily little question" that the party has standing to challenge the action. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992). A bank adversely affected because it was designated "too big to fail" would presumably have standing to challenge such a designation. This is not such a case. To begin with, at the time of the complaint, GE Capital had not yet been designated for

11

additional regulation. In any event, the Bank here is complaining about the "too big to fail" designation of someone else. When "a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*, much more is needed." *Id.* at 562.

To surmount that hurdle, the Bank relies on the doctrine of competitor standing. Under that doctrine, a plaintiff in some circumstances may challenge the Government's allegedly illegal under-regulation of the plaintiff's competitor. Competitors suffer an injury in fact "when agencies lift regulatory restrictions on their competitors or otherwise allow increased competition against them." *Sherley v. Sebelius*, 610 F.3d 69, 72 (D.C. Cir. 2010) (internal quotation marks omitted). But here, State National Bank's competitor (GE Capital) labors under a *greater* regulatory burden as a result of the Dodd-Frank Act. The Bank cites no precedent suggesting that a plaintiff has standing to challenge a regulation that merely imposes enhanced regulatory burdens on the plaintiff's competitor. The Bank retorts that the extra regulatory burden on GE Capital actually creates a reputational benefit for GE Capital. The problem with that novel theory, at least in this case, is that the link between (i) the enhanced regulation of GE Capital, (ii) any alleged reputational benefit to GE Capital, and (iii) any harm to State National Bank is simply too attenuated and speculative to show the causation necessary to support standing. *Cf. Allen v. Wright*, 468 U.S. 737, 759 (1984); *Florida Audubon Society v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996).

We affirm the District Court's judgment that the Bank lacks standing to pursue this claim.

12

IV

Fourth, the State plaintiffs challenge the Dodd-Frank Act's "orderly liquidation authority." This new orderly liquidation authority gives the Government broad power to liquidate failing financial institutions that pose a significant risk to the stability of the U.S. financial system. *See* 12 U.S.C. §§ 5384, 5390. Pursuant to the Government's orderly liquidation authority, the FDIC is authorized to treat similarly situated creditors of a company *differently* if doing so will increase the value of the company's assets or minimize losses. *See id.* § 5390(b)(4).

The State plaintiffs argue that the orderly liquidation authority is unconstitutional because it deprives the States of the uniform treatment to which they say they are constitutionally entitled under the Bankruptcy Clause of the Constitution, and which they previously enjoyed under the Bankruptcy Code. They also raise non-delegation and due process arguments.

The State plaintiffs' theory for standing and ripeness is as follows: (i) the States and their pension funds have invested in financial companies, (ii) the States are therefore potential creditors in possible future liquidations or reorganizations of those financial companies, (iii) in such a liquidation or reorganization, the Government's new orderly liquidation authority could deprive the States of the uniform treatment they claim they are entitled to, and (iv) as a result, their current investments are now worth less than they otherwise would be.

There are several independent problems with that theory. First of all, the State plaintiffs will be affected by the orderly liquidation authority only *if* a company in which they are invested is liquidated or reorganized by the Government, and

13

only *if* the States are then treated differently from other similarly situated creditors. It is premature for a court to consider the legality of how the Government *might* wield the orderly liquidation authority in a *potential* future proceeding. Second, to the extent the State plaintiffs say that future uncertainty over how such a proceeding would unfold affects the current value of their investments, the State plaintiffs have not sufficiently alleged or demonstrated that their current investments are worth less now, or have been otherwise adversely affected now, because of the Government's new orderly liquidation authority. Moreover, by the State plaintiffs' logic, virtually any investor could raise a pre-bankruptcy constitutional challenge to any bankruptcy-related statute, on a theory that the value of the investor's investments would be higher if the challenged provision were deemed unconstitutional. But we are not aware of any case that has allowed such a lawsuit, and the State plaintiffs cite no such case. *See* Thomas W. Merrill & Margaret L. Merrill, *Dodd-Frank Orderly Liquidation Authority: Too Big for the Constitution?*, 163 U. Penn. L. Rev. 165, 200 (2014) ("If the mere existence of a debt were enough to confer standing to challenge a change in the legal treatment of creditors, then any person would be able to challenge any change in the law that might conceivably affect their interests as creditors sometime in the future. This is clearly not the law."); *id.* (It "is not clear that this alleged injury, even if otherwise sufficient to confer standing, would support standing to challenge the" orderly liquidation authority's "constitutionality prior to the actual commencement of an" orderly liquidation authority "receivership.").

The State plaintiffs' theory, in short, does not satisfy standing or ripeness requirements. *See Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 n.5, slip op. at 7 n.5 (2014) ("The doctrines of standing and ripeness originate from the

14

same Article III limitation" and in certain circumstances can "boil down to the same question.") (internal quotation marks omitted).

The State plaintiffs separately argue that they have standing because the Dodd-Frank Act took away a statutory right to uniform treatment that they had previously enjoyed under the Bankruptcy Code. In the usual "statutory right" case, a plaintiff claims that an Executive Branch agency has deprived the plaintiff of a right guaranteed by statute. *See, e.g.*, *Zivotofsky v. Secretary of State*, 444 F.3d 614, 617-19 (D.C. Cir. 2006) (standing to challenge Secretary of State's authority to designate birth place on passport in contravention of a federal statute); *see also FEC v. Akins*, 524 U.S. 11, 21-25 (1998) (standing to challenge agency's denial of request for information). There is ordinarily little problem finding standing in such cases. The injury in fact in those cases is the agency's infringement of a present statutory right to the detriment of the plaintiff. That is not what we have here. This is not a case where a plaintiff claims that the Executive Branch has deprived the plaintiff of a right afforded by statute. Here, Congress enacted a new statute that superseded an old statute. Plaintiffs challenge the new statute. But to challenge the new statute, all that the plaintiffs can argue (and do argue) is that the new statute is unconstitutional. But as we have explained above, they do not have standing to press that constitutional claim nor is such a claim ripe for review.[2]

---

[2] If the State plaintiffs are injured at some point in the future by a liquidation or reorganization under the Government's orderly liquidation authority, the State plaintiffs can seek to raise their constitutional arguments then, as the Government acknowledges. *See generally Webster v. Doe*, 486 U.S. 592, 603 (1988).

15

\* \* \*

To sum up: First, the Bank has standing to challenge the constitutionality of the Consumer Financial Protection Bureau, and that claim is ripe. We therefore reverse the judgment of the District Court on that claim and remand for it to consider in the first instance the Bank's constitutional challenge to the Bureau. Second, the Bank has standing to challenge Director Cordray's recess appointment, and that claim is ripe. We therefore also reverse the judgment of the District Court on that claim and remand for it to consider in the first instance the Bank's constitutional challenge to the recess appointment. Third, the Bank lacks standing to challenge the constitutionality of the Financial Stability Oversight Council. We affirm the judgment of the District Court on that claim. Fourth, the State plaintiffs lack standing to challenge the Government's orderly liquidation authority, and that claim is not ripe. We affirm the judgment of the District Court on that claim.

The judgment of the District Court is affirmed in part, reversed in part, and remanded for further proceedings.

*So ordered.*